Good morning, Your Honor. Alisa Sawano-Peterson for the Petitioner. I would first like to start out by discussing the Confrontation Clause issue, which was submitted in the Supplemental Brief. And I would like to make clear that the retroactivity of Crawford v. Washington does not really affect this case, because even under Roberts, it was necessary to show the unavailability of a witness. And in this case, that showing was not made. And although the State Court and the District Court concluded that there was a diligent effort made to find the witness, in reality, what that diligent effort amounted to was a handful of phone calls over a six-day period, the majority being after the trial had already started. And there were a lot of other things that the District Attorney could have done but did not do to secure the attendance of the witness. Well, you know, they even put out a bench warrant for the guy, and he was not wanting to testify and was off skittering around the country. What more could have been done? Well, one of the main things that could have done was to secure his attendance under the Uniform Act, under Penal Code 1334. Do you know where he is? They did more or less know where he is, where he was, because Well, his employer, you know, there was some question as to whether the employer was very forthcoming, and they should have subpoenaed the employer to testify under oath, because it seems incredible that the employer would not know, you know, where he was going to drop the load, you know, drop his deliveries. And so they could have easily found out where he was going to drop his deliveries. I believe there was testimony that the first place he was going to go to was New York. Therefore, there was time to get the assistance of the authorities in New York, you know, wherever he was going to drop the deliveries, that county, to take him into custody immediately. And there were several points when that could have been done. When he was in Texas, you know, several places in Texas, they really had the ability to find out beforehand at least, you know, what county he was going to be in, and try to secure his attendance. And with a truck like that, it would be easy to spot. And if local authorities had been involved, they could have quite likely easily secured his attendance. How much time does it take to obtain a warrant under that? I don't believe there is a time limit. At least, maybe there is locally. How long does it take, even if notice had been given to, say, the Dallas County authorities? I think that would depend, you know, in each state. But I believe basically they have the ability to... He was a long haul driver, wasn't he? Right. So, I mean, if he was going to New York... He was on his way across the country. Right. But if they knew that he was going to deliver a load in New York within a certain time period, they could have requested assistance from those authorities in that state or, you know, in the county to try to find him. But those things weren't done. And in the first place, when they know he's a long distance driver, and then to allow him to be on call, there was really no excuse for that. I think one of the main reasons was that they already had his preliminary hearing testimony. They weren't that interested in getting a hold of him, because obviously cross-examination is going to be more vigorous at trial. And this is exactly the kind of thing that the confrontation clause tries to stop, the practice of getting testimony beforehand and then not trying very hard to find the witness later. And like I said, it seemed like the employers knew a lot more than what they were saying, and they should have also been brought into court. And the second point I wanted to briefly address was the issue and was the ineffective assistance of counsel in failing to submit these jury instructions. And the evidence at trial showed that there was a fight in a bar and that both of the victims were armed and that nobody really saw the petitioner stab anybody. And there's no evidence that he knew that they were armed or that their arms were at all visible during the scuffle that occurred. Or that they used them. Well, there was no nobody saw them using them. I believe that the at least in one of the victims, it was it was in a visible place. His weapon was in a visible place. I mean, there was no what there was no conduct on either victim's part, which in any way would have justified the use of deadly force. Well, I think there's enough of a question, and especially in regards to the lesser included offense instruction, there was testimony that they were holding down the petitioner and then he suddenly broke broke free and then he ran into Boyle, who was the one who was seven seconds later thrusting upwards so that the guy gets stabbed in the heart. Well, I welcome from the testimony that happened that way from the testimony, it looked like there was a possibility that he could have been brandishing a weapon and then just stumbled into him because he was trying to break free from the other guys. And under the circumstances, it's the petitioner's position that counsel was ineffective for failing to request such instructions. There was testimony that the people who were holding him, that he didn't struggle while they were holding him and that they then released him. I think, you know, that's unclear as to exactly what happened. That testimony. There may have been, but, you know, it was unclear as to exactly what happened, except that they were holding him. And then so when you have unclear evidence like that and the possibility that, you know, there could be another explanation besides murder, that those instructions should have been submitted. I have I would like to reserve the rest of the time and unless the panel has any other questions. May it please the court, Deputy Attorney General Sam Papagotto for responding. I also have a typo that I wanted to point out to the court on page three of Appellee's brief. I'm stating the date as 1990, of course. Sure. Of course, the date I've stated as 1990, but it should, of course, be 1980 on that page. I don't think I have too much to add here. I actually would concur with counsel's statement about the arm being restrained. One of the people that was restraining it said he did not know if he released it or petitioner broke free. So I think it is hard to say. But I also think that seven to eight seconds is quite a long time, especially when the victim was another sort of entryway of the bar on the phone, walks in and is just standing there saying, hey, what's going on? And I do think in this case, the jury was instructed, you know, with voluntary manslaughter. And I guess, you know, there was that was appropriate. But to me, this doesn't even seem like a barroom brawl at all. Where are the people brawling other than petitioner? The chaos ensued after the stabbing of McCall. They were very familiar with the record and the arguments, and we don't have any further questions. No need to respond. All right. Appreciate your argument in the matter. Just argued to be submitted and will next year argument.
judges: B. Fletcher, Rymer, Paez